### JAMES S. THOMPSON v. H. D. CROSBY.

(Filed September 8, 1905.)

1. **PROBATE COURT—Appeal to Supreme Court—Allowed, When.**
When a judgment is rendered in the probate court in a civil cause,
the defeated party may appeal direct to the supreme court in the
same manner as appeals are taken from the district court and with
like effect, where questions of law are to be reviewed.

2. **CONVEYANCE OF PERSONALTY—Constitutes Chattel Mortgage
When—Registry.** A contract which conveys personal property to
another merely for the purpose of securing the payment of a debt
is a chattel mortgage, regardless of whether the grantor or gran-
tee holds possession of the property, and unless such contract is
signed by two witnesses and filed in the office of the register of
deeds in the county where the property at the time is situated, it
is void as to execution creditors.

(Syllabus by the Court.)

*Error from the Probate Court of Caddo County; before
M. N. Gish, Probate Judge.*

*A. J. Morris* and *L. E. Lange,* for plantiff in error.

*Carl Glitsch. Herbert D. Crosby* and *W. L. Baxter,* for
defendant in error.

Opinion of the court by

BEAUCHAMP, J.: On the first day of January, 1903,
the Slayden-Kirskey Woolen Mills of Waco, Texas, com-
menced an action in the probate court of Caddo county against
T. B. Metcalf, who was then engaged in the mercantile busi-
ness at Bridgeport, in Caddo county, to recover the sum of
$142.35 upon account, and on February 2, 1903, recovered

judgment for that sum and costs. On the 26th day of January, 1903, T. B. Metcalf transferred his stock of goods to his father, Frank Metcalf, who immediately went into possession thereof. On the 6th day of February 1903, an execution was issued upon the judgment of the woolen mills against T. B. Metcalf and placed in the hands of the plaintiff in error, as sheriff of Caddo county, for service. On February 16, 1903, Frank Metcalf and T. B. Metcalf executed an instrument in writing by the terms of which they attempted to transfer to Herbert D. Crosby, the defendant in error, as trustee for certain creditors of T. B. Metcalf therein named, the stock of goods at Bridgeport. On the following day, the 17th day of February, 1903, the defendant in error, Crosby, took possession of the 'stock of goods, and remained in possession thereof until the 23rd day of February, 1903, when the plaintiff in error, as sheriff, levied the execution issued upon the judgment of the woolen mills upon the property in question, as the property of T. B. Metcalf, the same being a portion of the stock in the possession of Crosby. On the 20th day of March, 1903, Crosby, as trustee, commenced this action in the probate court of Caddo county to recover the possession of the property in controversy. On the fourth day of August, 1903, after trial, Crosby recovered judgment for the return of the property, and one cent damages and costs. A motion for a new trial was by the court overruled, exceptions allowed, and plaintiff in error brings the case here upon petition in error and case made for review.

The defendant in error has filed a motion to dismiss the appeal, for the reason that there is a question of fact involved, and that an appeal in such case from the probate court direct to this court is unauthorized.

The plaintiff in error brings the case here upon petition in error and case made, and alleges errors in the rulings and orders of the trial court in the progress and trial of the case, over the objections and exceptions of the plaintiff in error, and to his prejudice, and seeks a reversal of the judgment on account of the alleged errors in the rulings of the court upon questions of law arising in the progress of the trial. Under the former decisions of this court, it is the settled law in this Territory "that when a judgment is rendered in the probate court in a civil cause, the defeated party may appeal direct to this court where questions of law only are to be reviewed." *Decker v Cahill*, 10 Okla. 251; *Randolph v. Hudson, Id.* 398.

The motion to dismiss the appeal is overruled.

Upon the trial of the case in the court below the defendant in error, Crosby, claimed the title and right of possession of the property in question under and by virtue of the instrument in writing made and executed by Frank Metcalf and T. B. Metcalf, on the 16th day of February, 1903, and under which he (Crosby) was in possession when the plaintiff in error levied the execution. The plaintiff in error claimed that the transfer of the stock of goods by T. B. Metcalf to his father, Frank Metcalf, was fraudulently made for the sole purpose of defrauding the plaintiff in error and other creditors of T. B. Metcalf, and that the instrument under which Crosby claimed and was in possession was void as against the creditors of T. B. Metcalf, the same by its terms and conditions being a chattel mortgage, and not executed in the presence of two witnesses, and filed by depositing the same, or an authenticated copy thereof, in the office of the register of deeds. Testimony was heard in support of the

contentions of both parties. The case was tried by the court without a jury. The plaintiff in error at the trial requested the court to make findings of fact on the following issues:

"First, Was the transfer of the property in controversy made on the 26th day of January, 1903, by T. B. Metcalf to Frank Metcalf, made with intent to hinder and delay creditors of T. B. Metcalf?

"Second, Was the property in controversy the property of T. B. Metcalf, at the time the transfer was made to H. D. Crosby on the 16th day of February, 1903?"

This request was by the court refused, as shown by the record and exceptions allowed plaintiff in error, for the reasons stated in conclusions of law numbered 2 and 3, which are as follows:

"2. That the agreement or stipulation made and entered into on the 16th day of February A. D. 1903, by and between Thomas B. Metcalf, Frank Metcalf, by his attorney in fact and H. D. Crosby, trustee for the creditors named in said stipulation, with possession, was valid and binding on and after its date, whether recorded or not, as to all execution or other creditors of the said Thomas B. Metcalf, and that said Thomas B. Metcalf had the right to turn over any or all of said property to any of the honest creditors of the said Thomas B. Metcalf, in any way, manner or form that he the said Frank Metcalf might see fit, providing he did so before the levy was made.

"3. That whether the bill of sale from Thomas B. Metcalf to his father, Frank Metcalf, made on the 26th day of January, A. D., 1903, or the power of attorney from said Frank Metcalf to Carl Glitsch, made and recorded on the same day, were made in good faith, or for fraudulent purposes. makes no difference in this case, as nothing that was said or done at that time, by and between the parties present on that occasion, could in any way effect the rights of other persons, or invalidate the stipulations made in

good faith on the 16th day of February, A. D. 1903, with the intent to prefer and pay certain other creditors of Thomas B. Metcalf, whose claims were undisputed."

If the instrument under which the defendant in error claims is a chatted mortgage, and is not executed and filed for record as required by the statutes of this Territory, then the fact as to whether the transfer from Thomas B. Metcalf to his father was fraudulent and for the sole purpose of defrauding creditors, and the property was in fact the property of Thomas B. Metcalf at the time the execution was levied, became very material. The instrument under which defendant in error claims, omitting the description of the property, reads:

"Know All Men By These Presents:

"That, we, Thomas B. Metcalf and Frank Metcalf, parties of the first part, in consideration of one dollar ($1.00) to us in hand paid, and of the indebtedness of Thomas B. Metcalf hereinafter mentioned, and of the trust hereby created, have this day bargained, sold, assigned and delivered, and do hereby bargain, sell, assign and deliver to Herbert D. Crosby (hereinafter referred to as trustee) all the goods, chattels and personal property described as follows, to wit: (Here follows description of property) To Have and To Hold the same, but in trust, however, for the uses and purposes, and upon the conditions following, to wit:

"Whereas, the said Thomas B. Metcalf is now justly indebted to the several persons, firms and corporations named below (hereinafter referred to as creditors) in the amounts set opposite the names of said creditors respectively, that is to say:

"Name of creditor                                Amount of claim
"Smith-McCord-Townsend Dry Goods Co. K. C. Mo. 2500.00
"Goldstandt-Powell Hat Company, Kansas City Mo.. 300.25

"Jay-Smith Hat Company, Kansas City, Mo....... 259.15
"Hamilton-Brown Shoe Co., St. Louis, Mo....... 518.35
"Stern, Lauer, Stohl & Co., Cincinnati, O........ 718.00
"St. Louis Coffin Co., St. Louis, Mo............ 248.75"

"Now, therefore, if the first parties shall well and truly pay, or cause to be paid to the said creditors and to each of them the indebtedness aforesaid, and each and every part thereof, on or before the 1st day of March A. D. 1903, then this indenture and conveyance shall be void, otherwise in full force and virtue.

"In the meantime the said trustee is hereby given, and he shall take immediate possession of all the goods, chattels and personal property hereinafter described, and said trustee shall make a full and complete inventory of the same at the original cost price, and shall thereupon proceed to sell said goods and chattels at retail, and in the usual course of business, for cash only, at such prices as he shall deem best for all concerned.

"But in case said Thomas B. Metcalf shall not pay, or cause to be paid, the indebtedness aforesaid, within the time above limited, then and thereafter it shall be lawful, and said trustee is hereby authorized to sell said goods and chattels either at retail or in bulk, at public or at private sale with or without advertising at such price and upon such terms as he shall deem most advantageous to all the parties in interest; but no private sale of stock in bulk shall be made by said trustee at a price less than a sum equal to seventy five per centum of the original cost price thereof without the written consent of a majority in number or amount of the creditors herein named. And no public sale of said stock shall be made in bulk until after ten days notice of the time and place of said sale shall have been given to each of said parties of the first part, and to each of the creditors herein named, by written notice mailed to the respective addresses thereof, and by such other advertising of said proposed public sale for such

length of time as shall, in the judgment of the said trustee, be best calculated to advise the public in and about the said town of Bridgeport of the time and place of such intended :sale.

"The said trustee shall also proceed to collect said notes, .accounts and other indebtedness hereby transferred, by suit or ·otherwise, and in making such collection is hereby authorized to make such compromises and adjustments of accounts which .are disputed, or which are otherwise doubtful, as shall in his .judgment, be for the best interest of the parties hereto.

"From the moneys so derived from the sale of the goods ·and chattels as aforesaid, and from the collection of said ·notes, accounts and other indebtedness, said trustee shall pay :

"1st.   The costs and expenses of administering this trust including insurance, lights, fuel, clerk hire and other usual and necessary expenses, and including also a reasonable com-·pensation for his services in this behalf.

"2nd.   The said trustee shall next pay to the creditors ˥hereinbefore named the amounts so as aforesaid due to each of them, and shall return the residue, in money or in property, as the case may be, if any there be, to the said Frank Metcalf, ·or his duly authorized agent.

"But in case the moneys so derived from the sale of said ·property and the collection of said indebtedness, shall not ·after the payment of the expenses incident to the administration hereof, be sufficient to pay each of said creditors the full ·amounts and sums so due them as aforesaid, then the said trustee shall pay the creditors *pro rata* in proportion as the ·claim of each bears to the whole of said indebtedness; and said trustees shall make distribution among said creditors as ·often as the money in his hands, available for that purpose, ·shall equal ten per centum of the whole amount of said in-·debtedness.   And if, after the application of the proceeds as ·aforesaid any portion of said indebtedness shall remain unpaid, then said Thomas B. Metcalf agrees to pay the same, but

the said Frank Metcalf shall not be personally liable for any part of such indebtedness. In case it shall become necessary for the said trustee to purchase from time to time staple goods, in order to facilitate the sale of the goods and chattels herein described, and to save the sacrifice thereof, then the said trustee is authorized to purchase and pay for the same from the cash proceeds of sale and collections so made as aforesaid and the price of said goods, so to be bought by said trustee, shall be computed and considered as a part of the expenses incident to the administration hereof.

"The said store buildings in which said goods and chattels are now situate being the property of said Frank Metcalf, it is hereby agreed that no rent, or other charge for the use and occupation of said buildings, shall be made by said first parties to said trustee during the time that he shall occupy the same for the purpose of executing this trust up to and including the first day of October, 1903.

"In witness whereof, the said Thomas B. Metcalf, in person, and the said Frank Metcalf, by his duly authorized attorney in fact, have hereunto set their hands, this 16th day of February, A. D. 1903.
"Signed

"FRANK METCALF
"By CARL GLITSCH.
"Attorney in fact.

"I hereby accept the above trust this 16th day of Feby. A. D. 1903.
"Signed

"H. D. CROSBY.
"T. B. METCALF."

That this instrument is but a security for the payment of money, a chattel mortgage, from its plain provisions and conditions, can not be questioned. It does not purport to have been signed in the presence of witnesses, nor was it filed in

the office of the register of deeds as required by the statutes of this Territory, secs. 3578, 3583, W. S. The statute provides that "A mortgage of personal property is void as against creditors of the mortgagor, unless the original or authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged or any part thereof is at the time situated." Nor will the fact that Crosby was in the possession of the mortgaged property suffice to protect him as against the creditors of the mortgagor. *Greenville National Bank v. Evans Snyder Buel Co.,* 9 Okla. 394.

So that the fact as to whether the transfer by Thomas B. Metcalf to his father was fraudulent, and the property at the time of the levy of the execution by the sheriff was in fact the property of Thomas B. Metcalf, was one of the greatest importance; for if the transfer was fraudulent and the property in fact the property of Thomas B. Metcalf at the time the execution was levied, the mortgage to Crosby not having been executed and filed in the register of deeds office as required by the statutes, was void as against the plaintiff in error being a creditor of Thomas B. Metcalf, the owner and mortgagor of the property levied on. From an examination of the record we find that there was evidence in support of the claim of the plaintiff in error that the transfer by Thomas B. Metcalf to his father was fraudulent, and that the property at the time of the levy by the sheriff was in fact the property of Thomas B. Metcalf, and these questions being material issues under the pleadings, the trial court erred in its conclusions of law quoted.

.For the errors of the trial court mentioned, this case is reversed. Other errors are assigned, but inasmuch as they

may not necessarily arise on another trial, we will not review them at this time.

The judgment of the probate court of Caddo county is reversed, at the cost of defendant in error and the case remanded with directions to the trial court to grant a new trial, and to proceed in conformity wtih the views herein expressed.

All the Justices concurring.